Lusk v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-059-CR
No. 10-97-060-CR

Â Â Â Â Â ALAFIRE ASHLEY LUSK,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 203rd District Court
Dallas County, Texas
Trial Court # F96-03307-VP & F96-02784-TP
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Alafire Ashley Lusk was indicted on November 1, 1996 on two counts of vehicular
manslaughter for the deaths of Sarah Davis-Jackson and James Davis. See Tex. Penal Code
Ann. Â§ 49.08 (Vernon 1994). Lusk entered a guilty plea to the offenses. A jury assessed
punishment at seven years' incarceration in the Institutional Division of the Texas Department of
Criminal Justice and a $10,000 fine. See id. Â§ 12.33 (Vernon 1994). Lusk's appointed attorney
filed an Anders brief and a motion to withdraw on April 21, 1997. Anders v. California, 386 U.S.
738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). On April 30, we granted the attorney's motion to
withdraw in a per curiam order, finding that the appeal was without merit. Johnson v. State, 885
S.W.2d 641 (Tex. App.âWaco 1994, interlocutory order). Lusk has not filed a pro-se brief or
a request for an extension of time to file her brief. Id. at 647 & n.3. Thus, because we have no
viable points of error to consider, the judgment is affirmed. Tex. R. App. P. 81(b)(2), 90(a).
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM


Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion issued and filed June 18, 1997
Do not publish



nd she testified that when she took K.D.,
the two-month-old child was unbathed, smelled of cigarette smoke, and was underweight. 
According to Miller, Hurt and K.D.Âs presumed father Michael Dawkins both had
Âdrug problems.ÂÂ  She testified that Hurt used methamphetamine during her
pregnancy and that Hurt and Dawkins had been producing methamphetamine in the
apartment they shared with K.D.

Child Protective Services investigator Katy
Prescott testified that the apartment Hurt, Dawkins, and K.D. lived in had no
electricity.Â  It was 40 degrees outside, and the windows were open.Â  Furniture
and portions of the apartment were burned because another roommate had doused
his girlfriend with fuel and attempted to set her on fire.Â  When Prescott confronted Dawkins with the drug abuse allegations, he denied using
methamphetamine and insisted that he only smoked marijuana.Â  Hurt admitted that
she had smoked marijuana before becoming pregnant but insisted that she had not
used any drugs since she became pregnant.Â  However, Hurt and Dawkins both later
admitted that they had been using methamphetamine.

Â Since K.D. was removed from HurtÂs care, Hurt has
been incarcerated twice for drug-related offenses.Â  At the time of trial, Hurt
was serving a three-year federal sentence for attempting to manufacture
methamphetamine. Â After K.D.Âs removal, Hurt was in jail for about one month
before being released to an inpatient drug treatment program.Â  Upon release
from the drug program, Hurt failed to advise anyone of her whereabouts and did not
attempt to visit K.D. for a month.

Hurt argues that this evidence falls short of
being Âclear and convincing.Â Â She points to the fact that K.D. was already in MillerÂs
care when the State intervened because Hurt and Dawkins had asked Miller to take
the child.Â  None of the investigators or case workers personally witnessed Hurt
neglect or endanger the child. Â Hurt also argues that Prescott has no personal
knowledge of the condition of the apartment while K.D. was living there, only
the condition of the apartment after K.D. left.Â  HurtÂs mother Yvonne testified
that she never saw Hurt using drugs while pregnant nor did she know of drugs
being used or manufactured around K.D.Â  Yvonne testified that Hurt had been drug
free for over a year.

The testimony regarding HurtÂs drug abuse, her criminal
behavior, and the conditions of the apartment is evidence of conditions or
surroundings that endangered K.D.Âs physical and emotional well-being.

An environment which routinely subjects a child to
the probability that she will be left alone because her parents are once again
jailed, whether because of the continued violation of probationary conditions
or because of a new offense growing out of a continued use of illegal drugs, or
because the parents are once again committed to a rehabilitation program,
endangers both the physical and emotional well-being of a child.Â  Conduct that
results in such disability, and conduct that subjects a child to a life of
uncertainty and instability, endangers the physical and emotional well-being of
a child.

Â 

In re S.D., 980 S.W.2d 758, 763 (Tex. App.ÂSan Antonio 1998, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence in the light most
favorable to the verdict, we hold that a reasonable trier of fact could have
formed a firm belief or conviction that Hurt had knowingly placed or knowingly
allowed K.D. to remain in conditions or surroundings which endangered her
physical or emotional well-being.Â  See Cervantes-Peterson, 221 S.W.3d at
254.Â  When viewed in a neutral light, the evidence is such that the jury could
reasonably form a firm belief or conviction that Hurt had knowingly placed or
knowingly allowed K.D. to remain in conditions or surroundings which endangered
her physical or emotional well-being.Â  Id.Â  We need not address the sufficiency
of the evidence to support the other predicate violations for termination.Â  See
T.N.F., 205 S.W.3d at 629.

Best Interest of the Child

Â[T]here is a strong presumption that the best
interest of the child will be served by preserving the parent-child
relationship.ÂÂ  Id. at 633.Â  Several factors assist in determining if
termination is in a childÂs best interest: 1) desires of the child; 2)
emotional and physical needs of the child now and in the future; 3) emotional and
physical danger to the child now and in the future; 4) parental abilities of
the individuals seeking custody; 5) programs available to assist these
individuals to promote the best interest of the child; 6) plans for the child
by these individuals or by the agency seeking custody; 7) stability of the home
or proposed placement; 8) acts/omission of the parent which may indicate that
the existing parent-child relationship is not proper; and 9) any excuse of the
acts/omission of the parent.Â  Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976); Cervantes-Peterson, 221 S.W.3d at 254; T.N.F., 205 S.W.3d at 632.Â 
This list is not exhaustive.Â  Cervantes-Peterson, 221 S.W.3d at 254; T.N.F.,
205 S.W.3d at 632.

The evidence at trial showed that Hurt had been
unable to keep K.D. clean. Â Hurt and Dawkins were virtually homeless and unable
to provide a stable environment for K.D.Â  Miller stated she had observed Hurt
being Âquite roughÂ with K.D.Â  Miller characterized HurtÂs and DawkinsÂs
relationship as ÂrockyÂ and testified that there was a lot of hostility between
them. Â Hurt attended only about half of her scheduled visits with K.D.Â  She claimed
that at least some of these visits were canceled and she was sick or unable to
find transportation for the others.

Hurt has failed to comply with her court-ordered
family service plan. Â She has not maintained a residence, held down a job, or
regularly attended counseling. Â She has failed to pay child support. Â She has
not completed parenting courses. Â She completed drug rehabilitation as part of
her first incarceration, but federal charges for manufacturing methamphetamine
followed. Â Hurt complained that transportation problems and illness prevented
her from completing these tasks.Â  However, she has failed to take advantage of
services for which transportation was provided. Â Hurt failed to complete several
programs made available to her, including additional drug rehabilitation,
counseling, and parenting classes.

K.D.Âs foster mother testified that K.D. had
become a part of her family in the year and two months she had live with them. Â K.D.
refers to her foster parents as mom and dad, and they hope to adopt her.

Little testimony was offered with regard to HurtÂs
plans for K.D. following HurtÂs release. Â Yvonne and HurtÂs sister-in-law Betty
testified that K.D. should stay in the family. Â Betty testified to having
completed a successful home study to gain custody of K.D. Â Betty said she
wanted to have custody of K.D. to help re-establish her relationship with Hurt
and the family. Â Betty also testified that a local day care facility at which
Hurt worked in high school would be willing to hire Hurt upon release from
prison. Â Betty testified that before K.D. was taken from Hurt, she had seen K.D.
only once, which was in the hospital after her birth.Â  Since that time, Betty
has been around K.D. only twice for a few minutes each visit.

Â Â Â Â Â Â Â Â Â Â Â  Viewing the evidence in the light most
favorable to the verdict, we hold that a reasonable trier of fact could have
formed a firm belief or conviction that termination of the parent-child
relationship is in K.D.Âs best interest.Â  See Cervantes-Peterson, 221
S.W.3d at 254-55; In re A.D., 203 S.W.3d 407, 413-14 (Tex. App.ÂEl Paso
2006, no pet.).Â  When viewed in a neutral light, the evidence is such that the
jury could reasonably form a firm belief or conviction that Hurt had knowingly
placed or knowingly allowed K.D. to remain in conditions or surroundings which
endangered her physical or emotional well-being.Â  Id.Â  Accordingly, we
overrule HurtÂs second issue.

Motion for Continuance

Â Â Â Â Â Â Â Â Â Â Â  Hurt contends in her first issue that
the court erred by denying her motion for continuance.

Â Â Â Â Â Â Â Â Â Â Â  The decision to grant a continuance
rests within the sound discretion of the trial court.Â  Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004).Â  But the United States
Supreme Court has recognized that a denial of continuance may be so arbitrary
as to violate a litigantÂs right to due process.Â  See Ungar v. Sarafite,
376 U.S. 575, 589, 84 S. Ct. 841, 849-50, 11 L. Ed. 2d 921 (1964); Tex. DepÂt of Pub. Safety v. Struve, 79 S.W.3d 796, 802 (Tex. App.ÂCorpus
Christi 2002, pet. denied).Â  We must review the circumstances before the judge
at the time of denial to determine whether the decision was so arbitrary as to
violate due process.Â  Ungar, 376 U.S. at 589, 84 S.W.3d at 850; Struve,
79 S.W.3d at 802.

Â Â Â Â Â Â Â Â Â Â Â  K.D. was just two months old when she
was entrusted to the care of her paternal aunt following allegations of
neglect, homelessness, and drug abuse by both parents.Â Â  The child was
ultimately placed in foster case.Â  Both parents were, at the time of trial,
incarcerated in a federal penitentiary on drug charges.Â  The judge issued a
bench warrant to attempt to secure their presence.Â  However, federal
authorities refused to grant Hurt a transfer pursuant to the warrant.[1]Â 
Hurt moved for a continuance to delay trial until she was released or her
deposition could be taken.Â  The court denied the motion but agreed to pay for a
deposition to be taken while the proceedings continued (while acknowledging the
difficulties of taking the deposition of a federal inmate).

Â Â Â Â Â Â Â Â Â Â Â  The absence of a parent at a trial to
terminate her parental rights could leave the factfinder with the impression that
the parent deems the matter unimportant. Â In re J.D.S., 111 S.W.3d 324,
327 (Tex. App.ÂTexarkana 2003, no pet.).Â  ÂFurthermore, because of the obvious
negative connotations associated with a parent who is incarcerated, it is
important for the fact-finder to witness the demeanor and credibility of the
parent.Â Â Id.Â  It is well established that litigants cannot be denied
access to the courts simply because they are inmates.Â  Hudson v. Palmer,
468 U.S. 517, 523, 104 S. Ct. 3194, 3198, 82 L. Ed. 2d 393 (1984). Â However,
this right is not absolute.Â  In re Z.L.T. 124 S.W.3d 163, 165 (Tex. 2003).Â  In determining an inmateÂs right to appear in court, a court must balance the
prisonerÂs interest in appearing against the impact on the correctional
system.Â  Id.Â  It is the inmate who bears the burden of proving her
presence is a necessity.Â  Id. at 166. Â A key factor to consider is
whether the inmate can appear and participate through counsel.Â  See In re
K.M.H., 181 S.W.3d 1, 12 (Tex. App.ÂHouston [14th Dist.] 2005, no pet.).

Â Â Â Â Â Â Â Â Â Â Â  HurtÂs continuance motion contained no
statement as to the testimony Hurt expected to offer as required by the Rules
of Civil Procedure.Â  Tex. R. Civ. P.
252.Â  Failure to comply with the procedural rules results in a presumption that
the trial court did not abuse its discretion in denying the motion.Â  See In
re Z.A.T., 193 S.W.3d 197, 208 (Tex. App.ÂWaco 2006, pet. denied); In re
E.L.T., 93 S.W.3d 372, 375 (Tex. App.ÂHouston [14th Dist.] 2002, no pet.).

The circumstances of the motion warrant denial despite
due process concerns.Â  The motion is speculative as to any necessity for HurtÂs
testimony, there was no notice of deposition for Hurt, the dismissal date for
the case was impending, and the State has a substantial interest in providing a
permanent and stable home for K.D.Â  In addition, Hurt was able to participate
through her attorney.Â  Â[T]he right of a prisoner to have access to the courts
entails not so much his personal presence as the opportunity to present
evidence or contradict the evidence of the opposing party.Â Â In re D.D.J.,
136 S.W.3d 305, 313-14 (Tex. App.ÂFort Worth 2004, no pet.) (quoting Dodd v.
Dodd, 17 S.W.3d 714, 717 (Tex. App.ÂHouston [1st Dist.] 2000, no pet.)).

The court granted HurtÂs motion for a bench
warrant.Â  In a pretrial hearing following notification that the warrant would
not be honored, the court also determined that telephonic means of providing
for HurtÂs testimony were not possible and agreed to pay for her deposition to
be taken.Â  This is not a case in which the court summarily denied Hurt any
access to the court.Â  Cf. J.D.S., 111 S.W.3d at 328.Â  Because the
court adequately balanced the interests of the State and the federal correctional
system with those of Hurt, it was not a denial of due process to proceed
without Hurt present in the courtroom.Â  See Z.L.T., 124 S.W.3d at
166.Â  Thus, we cannot say that the trial court abused its discretion in denying
the motion to continue.Â  We overrule HurtÂs first issue.

The judgment is affirmed.

Â 

FELIPE REYNA

Justice

Â 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 29, 2007

[CV06]Â Â Â Â Â Â Â Â Â Â Â  









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Federal regulations provide
broad discretion to regional counsel and the warden in determining whether to
transfer a federal prisoner to state custody for a civil trial. Â 28 C.F.R. Â§ 527.31.